## Gladfelter v. Robinson

*Bishop Nicklas Kauffman,* for plaintiff.
*Michael George,* for defendant Butler Township.

KUHN, *J.,* October 2, 1987—On November 19, 1984, plaintiffs were involved in an accident on Township Route 369 in Butler Township, Adams County, when, allegedly, a vehicle operated by defendant, Robinson, but traveling in the opposite direction, struck a tree limb causing the same to break and impact with plaintiff's vehicle. Defendants, Butler Township and Conewago Corporation, were sued on the theory that they had responsibility for maintenance of the limb.

The township has raised a governmental immunity defense and the impact of plaintiff's failure to have insurance, with respect to several issues identified at a pre-trial conference. Those issues are now before us for disposition.

The first issue is whether the provisions of 42 Pa.C.S. §8553(c)(2) precludes plaintiff, John Gladfelter, from recovering damages for pain and suffering from the township.

This section of the Political Subdivision Tort Claims Act provides:

"(c) Types of losses recognized — Damages shall be recoverable only for:

". . .

"(a) Pain and suffering in the following instances:

"(i) death; or

"(ii) only in cases of permanent loss of bodily function, permanent disfigurement or permanent dismemberment where the medical and dental expenses referred to in paragraph (3) are in excess of $1,500."

As a result of the accident, Mr. Gladfelter allegedly suffered a laceration of the left hand and some diminished use of that hand. He incurred $689.40 in medical bills during the period November 19-21, 1984. He had six follow-up visits to his doctor between November 21, 1984, and January 3, 1985, for which he was not charged. Mr. Gladfelter maintains that he may require follow-up care sufficient to exceed the threshold amount.

In the only reported case brought to our attention, Judge Nygaard in *Boesch v. City of Erie,* 39 D.&C.3d 111 (1983), held, by analogy to the medical expenses threshold under the No-fault Automobile Insurance Law, 40 P.S. §1009.101, et seq., that a plaintiff need not have reached the section 8553(c)(2) threshold in order to file suit, so long as he alleges facts which show a reasonable certainty that the requirement will be met. There the complaint set forth medical expenses of $673 and alleged "possible future medical expenses." The court held that such an allegation does not constitute facts showing a reasonable certainty that medical expenses will eventually exceed $1,500 and sustained a demurrer by the city to plaintiff's claim for pain and suffering.

In the case sub judice, Mr. Gladfelter has not alleged in his complaint that he will incur future medical expenses. As noted in his answers to interrogatories he has not incurred follow-up care since January 3, 1985.

Based upon the nature of Mr. Gladfelter's injuries and the state of the record, we must find, subject to any additional evidence plaintiff may present to the contrary, that he is barred from recovering for pain and suffering from the township.[1]

The second issue concerns whether both plaintiffs are denied recovery from the township under 42 Pa.C.S. §8553(d) to the extent of insurance coverage available to other defendants found liable.

This section of the act provides:

"(d) Insurance benefits — If a claimant receives or is entitled to receive benefits under a policy of insurance other than a life insurance policy as a result of losses for which damages are recoverable under subsection (c), the amount of such benefits will be deducted from the amount of damages which would otherwise be recoverable by such claimant."

The township maintains that to the extent other defendants have insurance coverage and if those other defendants are liable to plaintiffs, pursuant to the provisions of the Comparative Negligence Act of July 9, 1976, 42 Pa.C.S. §7102, up to the maximum of such insurance benefit or recovery must be first deducted from the total amount of damages recoverable from all defendants before determining the township's actual financial responsibility. Defendants, Robinson and Conewago Corporation, argue that the township is entitled to no such credit or offset but that the term "insurance benefits" only in-

---

1. In correspondence from plaintiff's counsel, we are led to believe that additional evidence may not be forthcoming.

cludes benefits plaintiffs are entitled to receive because of a contract they have entered into or a status they enjoy.

Within the meaning of the Tort Claims Act the narrow issue is whether the Legislature intended to limit "insurance benefits" to those the claimant is entitled to receive based upon his or her own contractual arrangement or status or to also include proceeds of insurance paid to or to be paid on behalf of a nonmunicipal tortfeasor.

The township (and, incidently plaintiffs) argues that the Tort Claims Act should always be narrowly interpreted in favor of the governmental unit because the purpose of the act is to stabilize the political subdivision's ability to obtain insurance coverage by defining the risks to be covered. *Robinson v. Penn Hills School District,* 63 Pa. Commw. 250, 255, 437 A.2d 1273, 1276 (1981), and to insulate political subdivisions from tort liability. *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118, 1123 (1987). Because the Tort Claims Act does not specifically designate from whom the insurance benefits must be received, they should not be limited to plaintiff's first-party insurance benefits, according to the township.

The township then points to the Comparative Negligence Act, July 9, 1976, P.L. 586, 42 Pa.C.S. §7102, where, in subsection (b) it provides that, "plaintiff may recover the full amount of the allowed recovery from any defendant against whom plaintiff is not barred from recovery. Any defendant who is so compelled to pay more than his percentage share may seek contribution." Thus, the township argues, a verdict against all defendants would entitle plaintiffs to seek and recover, as third-party beneficiaries, the full amount of any verdict from another defendant's insurer. To the extent of such recovery, the

township contends it cannot also be compelled to pay plaintiffs.

This issue appears to be one of first impression in Pennsylvania. The only reported cases under section 8553(d) involve plaintiffs whose recovery against a political subdivision was reduced by benefits directly attributable to plaintiff's contractual arrangement, such as homeowners insurance, *Michel v. City of Bethlehem,* 84 Pa. Commw. 43, 478 A.2d 164 (1984), no-fault automobile insurance benefits, *Savitt v. City of Philadelphia,* 557 F. Supp. 321 (E.D. Pa., 1983), and automobile property damage benefits, *Wunsch v. City of Erie,* 25 D.&C.3d 742 (1983); *Aetna Casualty and Surety Co. v. Borough of Hamburg,* 22 D.&C.3d 454 (1982), or plaintiff's status, such as workmen's compensation benefits, *Savitt,* Id.

Despite the surface appeal of the township's well reasoned argument, we must nevertheless reject it. The Comparative Negligence Act would allow the nonmunicipal tortfeasor to seek contribution from the municipal tortfeasor. Section 8553(d) only places limits upon what a plaintiff may recover. Neither this section nor any other provision of the Tort Claims Act, prohibits a nonmunicipal tortfeasor from seeking contribution from a municipal tortfeasor. Therefore, limiting section 8553(d) as proposed by the township would not promote the legislative purpose of the Tort Claims Act by limiting township's financial responsibility. Also, if we followed the township's theory but allowed contribution, we would be encouraging a multiplicity of litigation. We note also that there may be some question whether plaintiffs are third-party beneficiaries of a defendant's insurance benefits. See *Folmar v. Shaffer,* 232 Pa. Super. 22, 24, 332 A.2d 821, 823 (1974) and *Philadelphia Forrest Hills*

*Corp. v. Bituminous Casualty Corp.,* 208 Pa. Super. 461, 463, 222 A.2d 493, 494 (1966).

We, therefore, conclude that the most logical interpretation is to limit the term "insurance benefits" to plaintiffs' first party benefits.

The third issue concerns the limitations of the township's liability to Mr. Gladfelter under section 8553(d) of the act where he is receiving disability income benefits from his employment for injuries received in the accident.

Mr. Gladfelter has admitted in his answers to interrogatories the existence of insurance through his employer for 60 percent of his 40-hour workbase. It is clear from the language of section 8553(d) and *Savitt,* supra, that, as respects any liability the township may incur, these benefits must be deducted from the township's portion of a verdict to arrive at its actual financial responsibility.

Our conclusion does not violate, as plaintiffs suggest, the collateral source rule. The same argument was raised and rejected in *Germantown Savings Bank v. City of Philadelphia,* 98 Pa. Commw. 508, 512 A.2d 756 (1986), where the court noted:

"The collateral source rule is a judically created principle stating that damages recoverable by a tort victim are not reduced by any insurance benefits payable under a policy obtained by that victim. *Moidel v. Peoples Natural Gas Co.,* 597 Pa. 212, 154 A.2d 399 (1959). There is nothing to prevent the Legislature from enacting legislation which abrogates a judicial principle as long as the legislation is constitutionally valid. We here hold that section 8553(d) is a constitutionally valid exercise of legislative authority." Footnote 9, 98 Pa. Commw. at 508, 512 A.2d at 761.

The fourth and final issue concerns whether Mr. Gladfelter is entitled to plead and prove at trial medi-

cal and wage losses where he was not covered by a first-party automobile insurance policy at the time of the accident, as required by the Motor Vehicle Financial Responsibility Act of February 12, 1984, P.L. 26, effective October 1, 1984, 75 Pa.C.S. §1701 et seq.

Mr. Gladfelter, at the time of the accident, was the owner of a vehicle registered in this commonwealth which was not insured. The township contends that the act precludes Mr. Gladfelter from pleading and proving the medical and wage losses he would have otherwise been entitled to as first-party benefits if he had insured his vehicle. We disagree.

Section 1714 of the act precludes an owner of a currently registered but uninsured motor vehicle from recovering first-party benefits. Section 1711 describes the required minimum first-party benefits the vehicle owner must obtain to include up to $10,000 in medical benefits and up to $1,000 per month (with a maximum of $5,000) for income loss. Section 1713 describes the priority of the sources from which first-party benefits can be recovered. Under section 1722 one who is eligible to receive benefits under section 1711 is precluded from pleading, introducing into evidence, or recovering the amount of such first-party benefits payable under section 1711.

The township advances a two-prong attack upon Mr. Gladfelter's ability to submit evidence of medical and wage loss, or to recover the same, by urging (1) that he is ineligible to recover such benefits under section 1714 and (2) that he should not be allowed to prove and recover losses when he disobeys the law which he could not have recovered under section 1722 if he had obeyed the law.

This argument certainly has an appealing ring

but based upon the language of the statute is not one we can embrace.

Judge Bayley recently had occasion to review the intent of the Legislature in enacting this statute in *Mowery v. Prudential Property & Casuality Ins. Co.*, 37 Cumber, L.J. 180 (1987) wherein he stated:

"The principal problem that the Legislature sought to remedy in enacting the Motor Vehicle Financial Responsibility Law was the rising consumer · cost of automobile insurance, which was the result, in part, of the great number of uninsured motorists who substantially contributed to the cost of paying claims while failing to contribute to the pool of insurance funds from which those claims were paid. . . . The provisions for enforcement of mandatory insurance in the Pennsylvania No-fault Motor Vehicle Insurance Act (repealed) had been ineffective in solving this problem. As noted by the comentators at §3:2(a):

" 'The financial responsibility law is designed to deny benefits to those who do not pay into the automobile insurance system. Those who own vehicles, but fail to insure them, reduce the pool of money available to pay claims and create additional cost factors in the insurance system.'

"The act promotes the purchase of insurance by all owners who register vehicles which can be legally operated on highways by defining a certain class of people who are not permitted to recover certain insurance benefits. That class consists of owners of uninsured registered vehicles. Plaintiff could have avoided ineligibility to recover first-party benefits under section 1714 by . . . purchasing adequate insurance. . . . We cannot say that the result was irrational when the Legislature created an insurance law designed to promote the carrying of insurance by owners of registered vehicles who could legally

operate them on the highways. As the Supreme Court stated in *Singer v. Sheppart,* supra, '. . . [T]he state has a legitimate object in seeing that all motorists are covered by adequate insurance.'" 37 Cumber. L.J. at 185-6.

However, *Mowery* is distinguishable from the case sub judice in that Mowery was seeking first-party benefits from one of the section 1713 sources and not from the third-party tortfeasor. Judge Bayley did not suggest that Mowery could not have sued the third-party tortfeasor for those losses.

It seems logical that if the Legislature intended to create an insurance pool and to preclude one from drawing upon that pool when he has not contributed to its maintenance it does not follow that he should be precluded from recovering those damages from a third-party tortfeasor if, by doing so, he is not drawing upon the insurance pool.

Here, Mr. Gladfelter sues the township and Conewago not because of their use or maintenance of a motor vehicle but rather because of their alleged failure to properly maintain real estate over which they have control. He is neither seeking first-party benefits from an automobile insurer as was the situation in *Mowery,* supra, or from any other section 1713 source. Therefore, he is not attempting to draw upon an insurance pool to which he has not contributed.

We view this situation in the same manner as did Judge Capuzzi in *Frye v. Pierotti,* 49 Fayette L.J. 124 (1986). There, the court did not preclude plaintiff from pleading damages equivalent to first-party benefits where neither plaintiff nor defendant was insured at the time of the accident. With insurance not being involved a law designed to create an insurance fund is not applicable. In the case sub judice Mr. Gladfelter is uninsured and the vehicle

insurance carriers of the township and Conewago are not involved. Precluding recovery against them is not rationally related to the legitimate legislative objective being promoted by the act.

The township counters that it has contributed to the insurance pool because of insurance purchased on its vehicles. We are also aware that defendant Robinson is covered by automobile insurance.[2] Nevertheless, we are unpersuaded by efforts to preclude Mr. Gladfelter's claim to recover medical loss and wage loss. Sections 1714 and 1722 clearly refer to two distinct situations. If one does not purchase insurance, he or she cannot recover first-party benefits from a section 1713 source (section 1714). If one sues in tort and is eligible to receive section 1711 benefits, he or she cannot plead or recover first-party benefits paid or payable (section 1722). Clearly Mr. Gladfelter is not eligible to receive section 1711 benefits under section 1714, therefore, he is not affected by section 1722.

If the Legislature intends to limit tort recovery to any extent where one has not purchased adequate insurance, it is for the Legislature to unambiguously make this intention known, but this court cannot impose such limitations based upon the language of the statute as it now exists.

Accordingly we enter the attached

## ORDER

And now, this October 2, 1987, the parties are directed to proceed in accordance with the attached memorandum opinion.

---

2. Counsel for defendant Robinson conceded in correspondence to the court that plaintiff is not precluded from recovering these losses.