569 A.2d 994

**Frederick G. SCHRAMM and Betty Jane Schramm, his wife, Appellants,**

v.

**ALLEGHENY COUNTY SANITATION AUTHORITY, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Oct. 4, 1989.

Decided Jan. 31, 1990.

---

Bruce J. Phillips, Gilardi & Cooper, Pittsburgh, for appellants.

No appearance for appellee.

Terry L.M. Bashline, Baginski & Bashline, Pittsburgh, for intervenor, Carson–Pirie–Scott and Liberty Mut. Ins. Co.

Before CRUMLISH, Jr., President Judge, and CRAIG, BARRY, COLINS, PALLADINO, McGINLEY and SMITH, JJ.

McGINLEY, Judge.

Frederick G. Schramm and Betty Jane Schramm (Schramms) appeal the order of the Court of Common Pleas of Allegheny County (common pleas court) directing the proceeds of a settlement in the amount of $45,000.00 be

distributed to the Liberty Mutual Insurance Company (Liberty Mutual), the workmen's compensation insurance carrier for Carson–Pirie–Scott (Employer), subject to the claim for attorney fees and costs. The question presented is whether the Schramms or Liberty Mutual are entitled to the settlement proceeds paid by the Allegheny County Sanitation Authority (ALCOSAN), a third party tortfeasor.

On July 12, 1984, while in the course of his employment, Frederick G. Schramm's auto was struck from the rear by a vehicle owned by ALCOSAN and operated by an ALCOSAN employee. Schramm was injured and received workmen's compensation benefits. The Schramms instituted a civil action against ALCOSAN. Liberty Mutual notified the parties that it was asserting a right of subrogation pursuant to Section 319 of The Pennsylvania Workmen's Compensation Act (Act)[1] and Liberty Mutual proceeded to intervene in the civil action averring a right of subrogation as Employer's workmen's compensation insurer and that the workmen's compensation lien exceeded the amount of the settlement.[2] (Petition to Distribute Proceeds of Settlement, paragraph 5, O.R. at 16.) After oral argument and the submission of briefs, the common pleas court awarded Liberty Mutual the settlement proceeds minus costs and attorney fees.

On appeal the Schramms argue that Liberty Mutual does not have a right of subrogation to the settlement proceeds by reason of Section 8553(d) of the Judicial Code (Code), 42 Pa.C.S. § 8553(d).[3] The Schramms maintain that Section

1. The Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 671.

2. Liberty Mutual has paid $70,449.96 in total workmen's compensation benefits. After deducting a $15,000.00 no-fault credit, Liberty Mutual has asserted subrogation rights in the amount of $55,449.96. (Brief in Support of Petition to Distribute Proceeds of Settlement, Original Record (O.R.) at 17.)

3. Section 8553(d) of the Code provides:

(d) Insurance benefits. If a claimant receives or is entitled to receive benefits under a policy of insurance other than a life insurance policy as a result of losses for which damages are recoverable under subsection (c), the amount of such benefits shall be

8553(d) of the Code entitles Frederick Schramm to deduct his workmen's compensation benefits from the amount of damages recoverable under Section 8553(c) of the Code, 42 Pa.C.S. § 8553(c)[4] from ALCOSAN because "insurance" as used in Section 8553(d) of the Code encompasses workmen's compensation benefits and the legislature intended, by enacting Section 8553(d) of the Code, to favor the political subdivision (and its insurance carrier, if any) over the subrogation rights of the Employer and the Employer's insurance carrier. The Schramms argue, therefore, that this Court's decision in *Bentler v. Workmen's Compensation Appeal Board (Scranton Professional Window Cleaning Company)*, 121 Pa.Commonwealth Ct. 332, 550 A.2d 854 (1988) should be overruled.

Initially, the Schramms argue that the Employer's and Liberty Mutual's policy of workmen's compensation insurance should not be treated differently than any other insurance policy under Section 8553(d) of the Code and that Liberty Mutual has no claim to the settlement proceeds. In *Michel v. City of Bethlehem*, 84 Pa.Commonwealth Ct. 43, 478 A.2d 164 (1984), Hans and Wilhelmina Michel sought to recover damages to their home in the amount of $23,490.00 from the City of Bethlehem caused by the rupture of a

deducted from the amount of damages which would otherwise be recoverable by such claimant. .

**4.** Section 8553(c) of the Code provides:
 (c) Types of losses recognized.—Damages shall be recoverable only for:
 (1) Past and future earnings and earning capacity.
 (2) Pain and suffering in the following instances:
 (i) death; or
 (ii) only in cases of permanent loss of a bodily function, permanent disfigurement or permanent dismemberment where the medical and dental expenses referred to in paragraph (3) are in excess of $1,500.
 (3) Medical and dental expenses including the reasonable value of reasonable and necessary medical and dental services, prosthetic devices and necessary ambulance, hospital, professional nursing, and physical therapy expenses accrued and anticipated in the diagnosis, care and recovery of the claimant.
 (4) Loss of consortium.
 (5) Loss of support.
 (6) Property losses.

water pipe owned and controlled by the city. The Michels received $20,440.00 from their insurer, State Farm. State Farm also brought an action asserting its right of subrogation against the City of Bethlehem seeking recovery of the $20,440.00 paid to the Michels. The cases were consolidated and the City filed a motion for summary judgment against the Michels and State Farm. The trial court entered a partial summary judgment against the Michels reducing their claim to $3,050.00. The Michels did not appeal. The trial court also granted summary judgment against State Farm's total claim of $20,440.00.

As in the present controversy, the parties in *Michel* agreed that the Michels' claim was within one of the eight exceptions to governmental immunity under the Political Subdivision Tort Claims Act (Tort Claims Act).[5] In *Michel* we recognized that Section 8553(d) of the Code makes no exception for a claim asserted by an insurance carrier as subrogee of an insured who had been injured under one of the eight circumstances specified in the Tort Claims Act. But *Michel* did not interpret "insurance" in Section 8553(d) of the Code to include workmen's compensation insurance benefits paid to the injured employee by the Employer or by an Employer's insurance carrier based upon the Employer's contract of insurance.

The employer's duty to provide compensation benefits to the employee is statutory and arises even where the injury to an employee is caused by a third party. *See Olin Corporation v. Workmen's Compensation Appeal Board*, 14 Pa.Commonwealth Ct. 603, 324 A.2d 813 (1974); Section 301(a) of the Act, 77 P.S. § 431. Section 319 of the Act provides the Employer a right of subrogation to the extent of the compensation paid where the employee's injury "is caused in whole or in part by the act or omission of a third

5. Act of November 26, 1978, P.L. 1399 *formerly* 53 P.S. § 5311.101–5311.803, which act was repealed by Section 333 of JARA Continuation Act of 1980, Act of October 5, 1980, P.L. 693, 42 P.S. § 20043. The provisions providing for governmental and official immunity are presently found in Sections 8541–8564 of the Judicial Code, 42 Pa.C.S. §§ 8541–8564.

party." *Swink v. Workmen's Compensation Appeal Board (Burrell Construction & Supply Co. and Bituminous Insurance Companies)*, 97 Pa. Commonwealth Ct. 623, 629, 510 A.2d 860, 862 (1986), *appeal dismissed*, 517 Pa. 504, 539 A.2d 348 (1988). Also, where the employer's insurance carrier has paid compensation to the injured employee and the employer is not a party to the settlement or where the employer is not precluded from asserting its right of subrogation, the insurance carrier is entitled to be subrogated to the full extent of its liability.[6] *Bumbarger v. Bumbarger*, 190 Pa.Superior Ct. 571, 155 A.2d 216 (1959). This Court has often noted that:

The right of subrogation is founded on principles of equity which seek (1) to prevent double recovery for the same injury by a claimant, (2) to ensure that the employer is not compelled to make compensation payments necessitated by the negligence of a third party, and (3) to prevent a third party tortfeasor from escaping liability for his negligence.

*Helms Express v. Workmen's Compensation Appeal Board (Lemonds)*, 106 Pa.Commonwealth Ct. 287, 291, 525 A.2d 1269, 1271 (1987).

Section 8553(d) is neutral concerning the employer-employee relationship and any inclusion of workmen's compensation benefits within Section 8553(d) of the Code is contrary to the legislative intent clearly expressed in the Act. Liberty Mutual contracted to insure the Employer and paid compensation benefits to Frederick G. Schramm. The Schramms obtained a $45,000.00 settlement of the trespass action against ALCOSAN, the third party tortfeasor, as a result of the same compensable injury that the Employer was responsible for under the Act and which compelled the payment of benefits to Frederick G. Schramm. *Helms Express*. Where there is no reference and no mention by the legislature that workmen's compensation benefits are

6. Section 401 of the Act, 77 P.S. § 701 defines employer to "mean the employer as defined in article one of this act ... or his insurer if such insurer has assumed the employer's liability...."

not included as insurance benefits we must conclude that Section 8553(d) of the Code does not modify the rights and obligations between an injured employee and his employer established by the Act.

The Schramms also argue that the present facts are distinguishable from the facts in *Bentler* [7] insofar as Liberty Mutual is proceeding directly against ALCOSAN. This is a misconception. Unlike State Farm in *Michel* Liberty Mutual seeks to enforce the Employer's right as Schramms' subrogee. ALCOSAN has settled the Schramms' claim and the Schramms seek to distribute the proceeds. [8] In *Bentler*, we stated:

> It is clear that Section 8553(d) operates as a limitation on damages which may be recovered from a *governmental defendant* by a party directly, or by that party's subrogee. The provision has no application in actions by a subrogee against the one to whose rights and disabilities he is subrogated, which is the situation here presented.

*Id.*, 121 Pa.Commonwealth Ct. at 337, 550 A.2d at 857 (footnote omitted and emphasis in the original).

In *Michel*, where the Michels were insured, the Michels had no claim for the damages covered by their insurance policy. The Michels had no claim to which their insurer was

7. In *Bentler* Claimant's husband, the Decedent, was fatally injured in a work-related accident while cleaning windows at a school within the Scranton School District. The Employer's workmen's compensation insurance carrier (Insurer) provided compensation to the Claimant and the Decedent's children. Claimant also filed a wrongful death action against the Scranton School District. A settlement was reached, and the Scranton School District agreed to pay the Claimant and the Decedent's children $175,000.00. The Insurer filed a petition to review the compensation agreement alleging that it was entitled to subrogation against Claimant's third party settlement pursuant to Section 319 of the Act. The referee granted the Insurer's right to subrogation in the full amount of the settlement. On appeal the Board affirmed but modified the amount of the award to Claimant's share of the settlement. In *Bentler* we affirmed the decision of the Board.

8. The Schramms allege in their petition that they entered into the settlement in reliance upon Section 8553(d) of the Code. (Petition to Distribute Proceeds of Settlement, Reproduced Record (R.R.) at 11a–13a.) However, the settlement agreement is not part of the record.

subrogated by reason of Section 8553(d) and the City of Bethlehem benefited in the amount of damages covered by the Michels' insurance policy.

The Schramms' cause of action is more involved because it is a personal injury action, unlike the contract action in *Michel.* But the nature of the action and the manner of the resolution are inconsequential. The fact that the outcome was "in the form of a settlement rather than a verdict is of no consequence ... mere proof of a third-party settlement is sufficient to establish an employer's right to subrogation." *Helms Express.* After all, Liberty Mutual's rights are derived from the insurance contract with the Employer.[9] In turn the Employer's right of subrogation to Schramm's rights is provided by Section 319 of the Act just as the workmen's compensation insurance carrier in *Bentler.* Herein, the Employer was the insured, not Frederick G. Schramm, although Schramm benefited as an employee under the terms of the Act. While the workmen's compensation benefits received by Schramm had their genesis in the Employer's contract of insurance with Liberty Mutual, they are statutorily mandated benefits provided under the Act and not "insurance" benefits as provided for in Section 8553(d) of the Judicial Code.

Accordingly, we affirm the decision of the common pleas court.

## ORDER

AND NOW, this 31st day of January, 1990, the order of the Court of Common Pleas of Allegheny County at No. 85–21363, dated February 2, 1989, is affirmed.

9. In the Answer to the Petition to Distribute Proceeds of Settlement, the Employer and Liberty Mutual asserted that Frederick G. Schramm received state mandated benefits from the Employer, pursuant to the Act, and that the Employer fulfilled its statutory obligations by purchasing a workmen's compensation policy from Liberty Mutual. The Answer unequivocally states that the right of subrogation involved is the Employer's. (R.R. at 15a–16a.)